UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| ARTHUR PIERRE LOUIS, | ) | |
| Plaintiff, | ) ) ) | |
|  | ) | Civil Action No. 11-11540-GAO |
| v. | ) ) | |
| BEAR HILL NURSING CENTER, INC., | ) ) | |
| Defendant. | ) ) | |

**REPORT AND RECOMMENDATION ON
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**
[Docket No. 18]

August 25, 2014

Boal, M.J.

Plaintiff Arthur Pierre Louis ("Louis") brings this action alleging that defendant Bear Hill Nursing Center ("Bear Hill") violated the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601 et seq. by terminating his employment after he requested and took medical leave. Bear Hill has filed a motion for summary judgment. Docket No. 18. For the following reasons, this Court recommends that the District Court deny Bear Hill's motion.[1]

---

[1] On April 2, 2014, the District Court referred Bear Hill's motion to this Court for a report and recommendation. See Docket No. 32.

1

I.   FACTUAL AND PROCEDURAL BACKGROUND[2]

Louis began working as a full-time housekeeper for Bear Hill in March 2001. DSMF ¶ 4. In that role, Louis cleaned patients' rooms and common areas in the Birchill unit of Bear Hill's nursing home. Id. at ¶¶ 6, 9. Louis' cleaning duties included mopping, sweeping and waxing floors, moving and wiping furniture, wiping surfaces, dusting, cleaning walls and mirrors, and disposing of trash. Id. at ¶ 8. Bear Hill maintained written cleaning guidelines which stated that housekeepers must clean to remove cobwebs and stains on walls in patients' rooms and bathrooms. See id. at ¶ 12; Docket No. 19, Ex. 3 p. 36/10 – 37/15.

Ansumana Makalo ("Makalo"), the housekeeping supervisor at Bear Hill, was responsible for ensuring that the housekeeping staff, including Louis, were performing their cleaning duties as expected. DSMF ¶¶ 10, 11. Makalo verbally reinforced with the housekeepers their cleaning instructions and periodically (about every month or two) "spot checked" their work areas following shifts. See id. at ¶ 14. When Makalo discovered problems or deficiencies with a housekeeper's cleaning work following a spot check or inspection, he generally would address the issue by talking to him or her. Id. at ¶ 15. Makalo also completed written employee evaluations of the housekeepers at Bear Hill. Id. at ¶ 16.

In various performance evaluations of Louis from 2001-2007, Makalo noted, among other things, that Louis needed to make sure to clean ceiling vents, fixtures, furniture, and walls,

---

[2] Because this case is before the Court on a motion for summary judgment, the Court sets out any disputed facts in the light most favorable to the non-moving party. See DeNolvellis v. Shalala, 124 F.3d 298, 302 (1st Cir. 1997). The facts, unless otherwise noted, are undisputed and are derived from: (1) Bear Hill's statement of material facts and Louis' response thereto ("DSMF_") (Docket No. 42); and (2) Louis' statement of undisputed and disputed facts and Bear Hill's response thereto ("PSMF _"). Docket No. 44. As stated in an accompanying ruling today, the Court considers herein only Louis' responses and statements that are material and properly supported.

2

needed to be pushed and supervised, and/or had received warnings[3] regarding deficiencies in his work. See id. at ¶¶ 18-20, 22, 24, 27-28; Docket No. 19, Exs. 5-A-5-J.

In or around August-September 2009, Makalo spot checked the patient rooms for which Louis was responsible, found stains on the walls, and told Louis that he was "getting tired of it." DSMF ¶ 31. On September 2, 2009, Makalo performed a spot inspection of Louis' rooms and found several rooms with stains on the walls and cobwebs in the bathroom. Id. at ¶ 29.[4] Makalo typed up his findings and brought them to the attention of William Ring ("Ring"), Bear Hill's nursing home administrator. Id. at ¶¶ 17, 30; Docket No. 19, Ex. 3-1. After speaking with Makalo, Ring inspected several of Louis' rooms and observed cobwebs and stains. DMSF ¶ 32. Bear Hill states that, following his inspection, Ring, in consultation with Makalo, decided to terminate Louis' employment. Id. at ¶ 33. Neither Ring nor Makalo notified Louis of his purported termination at that time. See id. at ¶ 34. Louis vehemently contests the timing of Bear Hill's decision to terminate him. See id. at ¶¶ 29-33.

After arriving home from work on September 2, 2009, Louis began experiencing severe abdominal pain, nausea, and vomiting. PSMF ¶ 6. That evening, Louis was taken to the Winchester Hospital Emergency Department. Id. He called out sick the next day. DSMF ¶ 36. Thereafter, Louis was in the hospital with a life-threatening illness for several weeks and underwent abdominal surgery. Id. at ¶ 37.

On October 13, 2009, Louis travelled to Bear Hill and presented to Dorna Devaney ("Devaney"), Bear Hill's Personnel Director, a Return to Work Certification executed by his

---

[3] For example, on October 15, 2004, Louis received a performance warning for his failure to properly dust televisions in patients' rooms. DSMF ¶ 23.

[4] Makalo testified that this inspection occurred on Louis' last day of work. Docket No. 19, Ex. 3 p. 15/18-22. There appears to be no dispute that Louis' last day of actual work at Bear Hill was September 2, 2009.

3

treating physician.  PSMF ¶¶ 17, 19; DSMF ¶ 41.  The certification indicated that Louis could return to work on October 26, 2009, but could not lift greater than fifty pounds.  DSMF ¶ 41.  Devaney informed Louis that if he could not lift fifty pounds, he could not work there.  Docket No. 19, Ex. 1 p. 64/3-7.

On October 14, 2009, Ring authorized Devaney to send written notification that Louis' request for FMLA leave had been approved.  PSMF ¶ 21.  In accordance with Ring's instructions, Devaney prepared and forwarded to Louis a notification that he was eligible for leave under the FMLA.  Id.; Docket No. 19, Ex. 4-4.[5]  Devaney has since testified that, at the time she prepared this form, she was not aware of any plan to terminate Louis.  PSMF ¶ 21.  She further testified that, in the event Louis was going to be terminated, he would not have received the notice.  Id.

On October 15, 2009, Louis presented a second Return to Work note, indicating the same restrictions and return date.  DSMF ¶ 43.  Devaney again advised Louis that he could not return to work under the listed restrictions.  See id. at ¶ 44.  Louis then gave Devaney a third Return to Work Certification, this time indicating that he could return to work without restrictions as of October 26, 2009.  See PSMF ¶ 22; Docket No. 19, Ex. 4-8.

On October 23, 2009, Devaney completed and sent to Louis a COBRA election notice.  DSMF ¶ 48.  Louis states that, on October 24, 2009, Makalo instructed him not to return to work on October 26, 2009.  PSMF ¶ 25; Docket No. 19, Ex. 1 p. 67/18-68/4.  The next day, Louis travelled to Bear Hill to speak with Makalo.  See PSMF ¶ 26.  When Louis asked Makalo what

---

[5] Bear Hill states that it decided to grant FMLA leave to Louis so that he could use his accrued sick time, and decided to continue to pay the employer portion of Louis' health insurance in light of Louis' length of service.  DSMF ¶ 38.  Bear Hill further states that Ring decided to wait and notify Louis about his termination until if and when he was able to return to work.  Id. at ¶ 39.

happened, Makalo told him, through an interpreter, that he had been terminated. See id.; DSMF ¶ 46.

On October 26, 2009, Ring completed an in-house Termination Notice for Louis. See DSMF ¶ 49; Docket No. 19, Ex. 4 p. 25/13-27/6; Docket No. 19, Ex. 1-2. The notice stated that Louis had been terminated involuntarily for "performance" reasons, and noted "Birchill patient room repeatedly not up to cleaning standards (i.e. walls dirty, etc.)." Docket No. 19, Ex. 1-2.

On September 1, 2011, Louis filed this action against Bear Hill. Docket No. 1. On January 14, 2014, Bear Hill filed the present motion for summary judgment. Docket No. 18. Louis opposed Bear Hill's motion on February 4, 2014. Docket No. 21. The Court heard oral argument on August 6, 2014.

## II. STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is 'genuine' if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party." Sanchez v. Alvarado, 101 F.3d 223, 227 (1st Cir. 1996) (quotations and citations omitted). A material fact is one which has "the potential to affect the outcome of the suit under the applicable law." Id. (quotations and citations omitted).

The moving party bears the initial burden of establishing that there is no genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If that burden is met, the opposing party can avoid summary judgment only by providing properly supported evidence of disputed material facts that would require trial. See id. at 324. "[T]he non-moving party 'may not rest upon mere allegation or denials of his pleading,'" but must set forth specific facts

5

showing that there is a genuine issue for trial. LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 841 (1st Cir. 1993) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)).

"[T]he material creating the factual dispute must herald the existence of 'definite, competent evidence' fortifying the plaintiff's version of the truth. Optimistic conjecture . . . or hopeful surmise will not suffice." Hidalgo v. Overseas Condado Ins. Agencies, Inc., 120 F.3d 328, 338 (1st Cir. 1997).

The court must view the record in the light most favorable to the non-moving party and indulge all reasonable inferences in that party's favor. See O'Connor v. Steeves, 994 F.2d 905, 907 (1st Cir. 1993). "If, after viewing the record in the non-moving party's favor, the Court determines that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law, summary judgment is appropriate." Walsh v. Town of Lakeville, 431 F. Supp. 2d 134, 143 (D. Mass. 2006).

III. ANALYSIS

Bear Hill argues that summary judgment is appropriate in this case because Louis is unable to establish a claim for retaliation under the FMLA. Docket No. 19 at 10-11.

Under the FMLA, "an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period . . . [b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). Any employee who takes such a leave "shall be entitled, on return from such leave – (A) to be restored by the employer to the [previous] position . . . or (B) to be restored to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment." 29 U.S.C. § 2614(a)(1)(A), (B).

The FMLA prohibits retaliation against employees who take FMLA leave. 29 U.S.C. § 2615(a); Pagan-Colon v. Walgreens of San Patrico, Inc., 697 F.3d 1, 8 (1st Cir. 2012). The pertinent FMLA regulation provides as follows:

> The [FMLA's] prohibition against "interference" prohibits an employer from discriminating or retaliating against an employee or prospective employee for having exercised or attempted to exercise FMLA rights. For example, if an employee on leave without pay would otherwise be entitled to full benefits (other than health benefits), the same benefits would be required to be provided to an employee on unpaid FMLA leave. By the same token, employers cannot use the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions or disciplinary actions; nor can FMLA leave be counted under "no fault" attendance policies.

29 C.F.R. § 825.220(c) (2009).

When, as here, there is no direct evidence of retaliation, the plaintiff must proceed under the model established in McDonnell-Douglas Corp. v. Green, 411 U.S. 792 (1973). Pagan-Colon, 697 F.3d at 8; Colburn v. Parker Hannifin/Nichols Portland Div., 429 F.3d 325, 335 (1st Cir. 2005); Hodgens v. Gen. Dynamics Corp., 144 F.3d 151, 160 (1st Cir. 1998). Under this model, the plaintiff has the initial burden of establishing a prima facie case of retaliation. Colburn, 429 F.3d at 336. To make out a prima facie case, Louis must show that (1) he availed himself of a protected right under the FMLA; (2) he was adversely affected by an employment decision; and (3) there was a casual connection between the protected conduct and the employer's adverse employment action. Chase v. U.S. Postal Service, No. 12-11182-DPW, 2013 WL 5948373, at *8 (D. Mass. Nov. 4, 2013); DiBlasi v. Liberty Mut. Grp. Inc., No. 12-10967-RGS, 2014 WL 1331056, at *10 (D. Mass. Apr. 3, 2014).[6] Bear Hill must then articulate

---

[6] In DiBlasi, Judge Stearns identified the causation prong as requiring "but-for" causation. DiBlasi, 2014 WL 1331056 at *10 (citing Univ. of Texas S.W. Med. Ctr. v. Nassar, ―― U.S. ――, 133 S.Ct. 2517, 2534 (2013)). In Chase, Judge Woodlock analyzed whether the FMLA actually requires "but-for" causation or, instead, requires only "motivating factor" causation. Chase, 2013 WL 5948373 at *9-12. He did not decide the question, finding that the

7

a "legitimate reason" for the adverse employment action. DiBlasi, 2014 WL 1331056 at *10 (citation omitted). If Bear Hill is able to do so, Louis must then establish that Bear Hill's stated reason is pretextual. Id.

Here, for purposes of summary judgment, Bear Hill does not contest that Louis availed himself of a protected right under the FMLA or that his termination constituted an adverse employment action. Docket No. 19 at 11. Bear Hill does, however, challenge Louis' ability to show that his exercise of his FMLA rights caused his termination.

The prima facie burden for a retaliation claim is "quite easy to meet." Hodgens, 144 F.3d at 165 (citations omitted); see also Packard v. Commonwealth Exec. Office of Pub. Safety, No. 08-11782-GAO, 2011 WL 4549199, at *9 (D. Mass. Sept. 9, 2011) ("[T]he burden for establishing a prima facie case is not onerous."). Indeed, "the prima facie requirement is a low bar to overcome, and case law suggests that temporal proximity may, at least in some instances, be sufficient to carry a plaintiff's case over it." Wagner v. Baystate Health, Inc., No. 12-cv-30146-MAP, 2013 WL 5873295, at *4 (D. Mass. Oct. 29, 2013). However, "[t]he cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close.'" Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 273-74 (2001) (citation omitted). In this circuit, a close relationship between the time of the protected activity and the adverse action is "strongly suggestive of retaliation." Wagner, 2013 WL 5873295 at *4 (quoting Oliver v. Digital Equip. Corp., 846 F.2d 103, 110 (1st Cir. 1988) (suggesting that a one or two month interval between a protected

---

plaintiff had adduced sufficient facts to overcome summary judgment under either standard. See id. at *12. Here, the parties have not presented any argument as to which causation standard should apply. In any event, for the reasons stated herein, the Court finds that Louis has presented enough evidence to raise a genuine issue of material fact under either standard.

activity and adverse action is close enough to imply retaliation for purposes of a prima facie case)).[7]

Here, the parties dispute the timing of Bear Hill's decision to terminate Louis. Bear Hill maintains that Makalo and Ring decided to terminate Louis on September 2, 2009, before he went on FMLA leave. Docket No. 19 at 12; DSMF ¶ 33. Louis, on the other hand, states that Bear Hill only elected to terminate him in late October 2009 after he demonstrated that he was medically able to return to work. See Docket No. 27 at 15; PSMF ¶¶ 21, 24-26. Construing this dispute in Louis' favor, the record shows that Bear Hill terminated Louis' employment at, or immediately after, the conclusion of his FMLA leave. This timing is certainly sufficient to establish the requisite level of causality for the purpose of establishing a prima facie case of retaliation.

The burden then shifts to Bear Hill to produce evidence sufficient to permit a rational fact finder to conclude that Louis' termination was made for a legitimate reason. Bear Hill argues that it terminated Louis because he failed to perform his cleaning duties properly. Docket No. 19 at 14. Bear Hill's proffered reason is supported by numerous performance evaluations of Louis, in which Makalo stated that Louis needed to make sure to clean ceiling vents, fixtures, furniture, and walls, needed to be pushed and supervised, and/or had received warnings regarding deficiencies in his work. See DSMF ¶¶ 18-20, 22, 24, 27-28. Bear Hill has also presented evidence that, in the month preceding Louis' leave, Makalo and Ring inspected Louis' rooms and discovered stains and cobwebs. Id. at ¶¶ 29-31. On this record, this Court finds that Bear Hill has met its burden of production at the second stage of the analysis, and the burden shifts back to Louis.

---

[7] However, a plaintiff's "indirect evidence of temporal proximity, even if satisfactory for [him] to establish [his] prima facie case, is not enough, without more, to show pretext" at the third stage of the analysis. Wagner, 2013 WL 5873295 at *5.

At the third stage, Louis must provide evidence to raise a genuine issue of material fact as to whether Bear Hill's legitimate, non-retaliatory reason was a pretext for retaliation. Louis argues that, given the inconsistent testimony from Bear Hill's representatives regarding when and why it elected to terminate him, there is a genuine issue of material fact. Docket No. 27 at 14-15. To that end, Louis points to conflicting evidence regarding the date on which Bear Hill terminated him. DSMF ¶ 33; PSMF ¶¶ 21, 24-26; Docket No. 19, Ex. 1-2. Although Bear Hill claims to have terminated Louis' employment on September 2, 2009, it subsequently granted FMLA leave to Louis. Id. at ¶ 33; PSMF ¶¶ 13, 21. Moreover, when Louis presented Bear Hill with two Return to Work Certifications in mid-October 2009, Bear Hill did not explain to Louis that he had been terminated but, rather, that he could not return to work under the listed restrictions. See DSMF ¶¶ 41-44.

This Court finds that there is a genuine issue of material fact as to when and why Bear Hill made the decision to terminate Louis.[8] Accordingly, Bear Hill's motion for summary judgment should be denied.

## IV. RECOMMENDATION

For the foregoing reasons, this Court recommends that the District Court deny Bear Hill's motion for summary judgment (Docket No. 18).

## V. REVIEW BY DISTRICT COURT JUDGE

The parties are hereby advised that under the provisions of Fed. R. Civ. P. 72(b), any party who objects to these proposed findings and recommendations must file specific written

---

[8] In addition, because the issue of whether a defendant's reasons for termination are pretextual involves questions of motive and intent, a court should be cautious about granting an employer's motion for summary judgment based on such determinations. Hodgens, 144 F.3d at 167; Crevier, 600 F. Supp. 2d at 262. "The role of the trial judge at the summary judgment stage is not to weigh the evidence and determine the truth of the matter, but to determine if there is a genuine issue for trial." Hodgens, 144 F.3d at 167 (citation and internal quotation marks omitted).

objections thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the proposed findings, recommendations, or report to which objection is made, and the basis for such objections. See Fed. R. Civ. P. 72. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Fed. R. Civ. P. 72(b) will preclude further appellate review of the District Court's order based on this Report and Recommendation. See Phinney v. Wentworth Douglas Hosp., 199 F.3d 1 (1st Cir. 1999); Sunview Condo. Ass'n v. Flexel Int'l, Ltd., 116 F.3d 962 (1st Cir. 1997); Pagano v. Frank, 983 F.2d 343 (1st Cir. 1993).

/s/ Jennifer C. Boal
JENNIFER C. BOAL
UNITED STATES MAGISTRATE JUDGE